## Smith *versus* Steele.

1. The right of one who claims by settlement may be suspended by the entry or action of *the actual owner*, but not by the entry of a stranger to the rightful title, even though the latter enter under color of title, except as to the part actually held by the stranger or those claiming under him.

2. No color or show of title or right of entry can be derived through a sheriff's sale of the premises in dispute as the property of one who had no interest in the land sold;—nor will a *patent* obtained by the purchaser after his purchase give any force to his entry.

ERROR to the Common Pleas of *Luzerne county*.

This was an ejectment brought on 13th June, 1846, by David Steele *v.* Martin Smith and Jacob Bilheimer.—It was brought for three hundred acres of land or thereabouts, situate in the townships of Sugarloaf and Butler, in Luzerne county.

The plaintiff claimed under an improvement warrant for three hundred acres issued upon his application on the 17th March, 1815, with interest from 1810; a survey of 273 acres made thereon on the 12th May, 1815, and a patent for the same, 17th May, 1816. There was no dispute about the location of this tract.

It was in evidence that the plaintiff commenced his chopping where his house is marked on the diagram in 1810 or 1811, and put up a house and moved on the premises in 1812; and one witness testified that the land was run out in 1811–12 by Chesney for Steele.    He had from five to seven acres cleared in 1815, and in 1842 the witnesses estimated from 15 to 30 acres—part of the clearing being, as admitted, on the Joseph Davison tract hereafter mentioned.    He had a small clearing within his survey, between one half an acre and an acre and a quarter, as witnesses differently estimated, some distance from his house, near the creek, and within the bounds of the survey of the Haines tract.    Of the witnesses who spoke of this small clearing, one said that Steele kept it up until he was put out of possession in 1842, and another swore that it went down several years before that time.

[Smith *v.* Steele.]

The defendant (Bilheimer) claimed title to part of the land under a warrant issued to Joseph Davison, 1st July, 1784, survey April 13, 1787, patented to Standish Ford in 1795, and by divers mesne conveyances vested in the defendant.

In the year 1834 Page and others, then owning the Davison title, brought an ejectment against Steele, recovered by an amicable arrangement, and in 1842 Steele was put out of possession under an *habere facias*, down to what the defendant claimed as the south line of the Davison tract. Bilheimer then purchased the Page title to the Davison tract.

No disputed question of law arose so far. The defendants also gave in evidence:—

1st July, 1784, warrant to Charles Haines. 20th November, 1784, survey on same. 14th March, 1812, re-survey of the same under order of the Board of Property. The re-survey, as was proved, covered also the Oplinger improvement, and a part of the Steele survey. It was a disputed question under the evidence whether the north line of the Haines tract as originally surveyed, extended to the north line of the Steele survey. It was not disputed but that the re-survey laid as represented on the diagram, leaving fifty rods between the north line of Haines re-survey and the north line of Steele.

In 1813, Seeley, Gray, and others brought an ejectment against Wenner and Oplinger in the Luzerne Common Pleas, and on the 10th November, 1819, judgment of non-suit was rendered against them. Upon this judgment a *fi. fa.* for costs was issued by the then defendants, and that part of the Charles Haines tract now claimed by Steele, as the defendant, Bilheimer, contended, with other lands, were levied upon, condemned, and sold by the sheriff. *Benjamin Delamater* was the purchaser, and on the 16*th February*, 1820, received his deed from Isaac Bowman, then sheriff of Luzerne county.

In the spring of 1823, Delamater moved on to this lot, claiming it under his sheriff's deed, erected a house thereon, cleared a small piece, and lived there for a year or more. When he left he put in John Powns under him, who lived there until 1836 or '37.

On the 4th October, 1831, Benjamin Delamater obtained a patent from the Commonwealth, for the part of Charles Haines's tract, claimed by him as purchaser at sheriff's sale. After the death of Delamater, his heirs, by deed dated the 16th February, 1841, conveyed their right in the same *to Bilheimer*, one of the present defendants, who for eight to ten years previous to the trial, was in possession of and working and improving the land. He claims by virtue of his deed from the heirs of Delamater; but no conveyance was shown by defendant from Charles Haines, the warrantee, nor was there any evidence showing any title *to the*

[Smith *v.* Steele.]

*Charles Haines tract in Gray and others,* under whom defendant claims.

JESSUP, J., charged, *inter alia,* as follows:—

" David Steele, the plaintiff, seeks to recover this land by virtue of a title acquired under a settler's warrant, dated 17th March, 1815, for 300 acres, reciting a settlement of 10th June, 1810.

" A survey was made on this warrant on the 12th May, 1815, of 273 acres and 31 perches, and a patent was issued therefor to Steele on the 17th May, 1816. Steele continued in possession until November, 1842, when he was turned out of possession of a part of the tract by virtue of a writ of *habere facias possessionem.*

" This suit was brought to August Term, 1846. This title on its face gives right to the plaintiff to recover.

" The defence against it rests upon several grounds which it will be necessary to consider separately ; and, first, as to the lot marked on the drafts as ' 30 acres.' This, by the plotting, appears to be a part of the survey to Charles Haines ; but upon some re-survey seems to have been left out, and is not covered by the patent subsequently granted upon that warrant to Benjamin Delamater, on the 4th October, 1831. There is therefore no adverse title to that of Steele shown for this 30 acres. It is not covered by the Davison survey, and the Oplinger settlement is not shown to have embraced it. For this lot, therefore, the plaintiff seems entitled to recover.

" We are next to consider that part of the land in controversy which is claimed to be upon the tract surveyed in the name of Joseph Davison. It was upon this land that Steele made his first settlement, and upon it the principal improvements have been made. If it were surveyed prior to Steele's settlement, then he by that settlement acquired no rights. The land having been appropriated, was not open to settlement. After the warrant and survey to Steele he would be in possession under a title, and if the owner did nothing to prevent, would acquire title after twenty-one years by the statute of limitations. But in 1834, an ejectment was brought by Page and others, who then held the title to the land, against David Steele, and on the 4th January, 1837, a judgment by consent was entered for the plaintiffs, for the land embraced in the Davison warrant, according to a written agreement filed in the case. By the terms of this agreement, Steele admits the validity of the Davison title, and having agreed to purchase, he cannot now resist the title which Bilheimer (the defendant) holds to the Davison warrant.

" It is therefore a question of fact to be settled by the jury under the evidence, how far the Davison warrant extends upon the Steele survey.

" It will be for the jury to determine this question of boundary.

[Smith *v.* Steele.]

The plaintiff is not entitled to recover for any part of the Davison tract.

" The other portion of the lands still remains to be considered.

" Steele's survey was very irregular. That part of it which covers the 30 acres before spoken of, and also that which is claimed to be covered by the Davison warrant, has already been submitted to the jury.

" The other part now to be disposed of involves the following considerations:

[" In 1815, Steele had his official survey, and being then in actual possession, is to be considered as having actual possession to the extent of his lines. If any portion of his survey covered other older surveys, if his possession continued uninterrupted by the owner for twenty-one years, the statute of limitations would perfect his title to the extent of his survey. An entry upon the land by a person without title would only affect so much land as the intruder had in his *actual* possession. An entry by the owner would prevent the running of the statute as to any portion of the land to which he had title, but an entry by a stranger would not have this effect. As to all except the owner, Steele was rightfully in possession, and the effect of that possession was to quiet his title after twenty-one years, to the extent of his lines.

" That part of the tract now under consideration appears to have been covered by the survey to Charles Haines.

" It is in the evidence that in 1813 Robert Galbraith and others brought an ejectment against Wenner. In 1817, a judgment of non-suit was entered, and in 1819 this property was levied on as the property of the plaintiff. In 1820 it was sold by the sheriff and conveyed to Benjamin Delamater. There is no evidence of title in the plaintiffs. In 1823, Delamater went into possession, remained a short time, and moved away. John Powns came in after him, and Bilheimer, the defendant, now occupies the land.

" In 1831, Delamater obtained a patent for 196 acres, the Charles Haines warrant.

" Applying the principles we have before stated, if the jury should find the facts as we have stated them, then for so much land as Delamater and those who claim under him have in actual possession, the plaintiff is not entitled to recover; but if the jury find that Steele's warrant covers this land, and that he has been in the actual possession, without entry by the owner for twenty-one years, then for all the land not in the actual possession of the defendant, Bilheimer, under Delamater, he will be entitled to recover.

" The entry of Delamater under his sheriff's deed is claimed to be an entry by color of title, and so an ouster of Steele's previous possession to the extent of Delamater's claim, especially as he afterwards perfected his claim by a patent. But we cannot assent

[Smith *v.* Steele.]

to this proposition. Delamater had no more right of entry under a sale by the sheriff than under a sale by any other person. If the defendant in the execution had no title, the purchaser had none, and as against Steele the granting of the patent, except to the true owner, who could connect the title of the warrantee with his own, was entirely inoperative.

" Delamater's entry is therefore to be considered only as the entry of a stranger, and is not to affect Steele beyond the lands occupied."]

To this charge the defendant's counsel excepted.

14th November, 1850, the jury found for the plaintiff, for all the land marked out as his, on the draft made by Elias Hoyt, and for which he has a patent from the State, being the land claimed in the writ, excepting the improvement of Delamater and the house erected by him, and ten acres of land around said house, now improved, which they find for defendants.

It was assigned for error :
1. That the Court erred in stating the case as set forth in the latter part of the charge, as contained within brackets.
2. That they particularly erred in charging that the possession and occupancy of Delamater and his tenant, and of Bilheimer, did not oust the constructive possession of Steele to that part of the Haines survey, included within Delamater's sheriff's deed and patent,—so as to defeat his right under the statute of limitations.

The case was argued by *Woodward*, with whom was *Maxwell*, for Smith and Bilheimer, plaintiffs in error.

The two points assigned in error cover the same ground. Steele's survey was made in 1815 ; Delamater entered under his deed in 1823, and obtained his patent while Powns, his tenant, lived there in 1831. We say Steele's holding was broken by this possession to all within the lines of Haines.

Steele was only in constructive possession—so the Judge assumes. Delamater entered under color of title, and his possession was actual and co-extensive with his title. 1 *Ser.* & *R.* 111, Cluggage *v.* Duncan; 2 *Ser.* & *R.* 439, Burns *v.* Swift; 7 *Ser.* & *R.* 129, Miller *v.* Shaw; 3 *Watts* 70, McCall *v.* Neeley; 5 *Barr* 490, Seigle *v.* Louderbaugh; 5 *Barr* 300, Waggoner *v.* Hastings; 5 *Barr* 290, Kite *v.* Brown.

Steele was not the owner or in actual possession of the part of his survey covered by Haines. His old clearing of the potato patch, which, Murray says, went down several years before 1841.

The court put the case to the jury, as ʰdependent not upon Steele's occupation of this patch, but his occupation of his land without the lines of Haines.

Delamater entered under a sheriff's deed—was in by his tenant

under a patent in 1831.  The patent is at least equivalent to an *official survey*, in its adoption of such a survey.  Then he is in possession of all covered by his patent—in actual possession.  Does not this *oust* then mere *constructive* possession of Steele under his survey?  Will not *actual* possession, with color of title, oust a mere *constructive* possession, without any actual possession, within the bounds of the tract to which color is shown?  If Steele had been the *true owner* of all the land, then his residence upon part of his tract would have operated upon the whole; but that is not his case.

From 1823, the entry of Delamater, to the beginning of this suit, was more than 21 years.

2. Delamater obtained a patent for the land.  If he is not entitled to the patent, he is to be considered a *trustee* for the real owner of the Haines tract.

1 *Ser.* & *R.* 203, Duer *v.* Boyd; 5 *W.* & *Ser.* 60, Urket *v.* Coryell. Is not his entry then to be considered as the .entry of the true owner?  At any rate so far as to defeat a claim dependent upon another being in constructive possession.

*McClintock* for Steele, defendant in error.—Steele went into possession in 1811.  He had a survey made the next year—took his warrant and had an official survey made in 1815, and procured his patent in 1817.  The part of the Charles Haines survey, claimed by Bilheimer, is included in both of Steele's surveys and in his patent.  Steele resided from 1812 till 1842 within his survey, claiming the whole, and having nearly all that time a small piece cleared and occupied on the Charles Haines survey.  He resided within the bounds of his survey, cultivated part, had his patent, and claimed the whole for nearly thirty years.  He was therefore the actual .owner of part of his survey, and had strong color of title to that part interfering with part of the Charles Haines survey.

"Actual possession of part of a tract under color of title to all the land within marked and defined boundaries, gives constructive possession to the whole, although the enclosed portion be within the bounds of an elder and better survey, and the constructive possession is of the same character with the actual, and equally bars the right by the statute without evidence of any acts of ownership within the lines of the elder survey." 5 *Barr.* 300, Waggoner *v.* Hastings; 5 *Barr* 291, Kite *v.* Brown.

Under the law as held in these cases, Steele acquired a perfect title to the whole tract within his survey.  Can his title be defeated by the entry made by Delamater?  It is held in Altemus *v.* Long, 4 *Barr* 254; Hinman *v.* Cranmer, 9 *Barr* 40; and Adams *v.* Robinson, 6 *Barr* 271, that "an *entry* by the *actual owner* suspends the running of the statute of limitations."  An entry puts *the owner*, by virtue of the statute of 1785, (*Dunlop's Dig.*, 147), in actual possession.  Altimus *v.* Campbell, 9 *Watts*

[Smith *v.* Steele.]

28.  But such effect can arise only from an entry *by him who has* the right; an entry by *a stranger to the real title* gives no posses-sion as against a prior right, or other possession adverse to the owner, beyond actual improvement.

Delamater was not the owner of the Haines survey. The sheriff's deed vested no title in him—gave him no *right of entry.* Steele had his patent, including the part of the Haines survey in controversy, and actual possession, upon that part, many years before Delamater entered. The entry of Delamater could not ex-tend his claim beyond his actual possession, as there was possession under an older and better claim at the time he entered. His entry therefore did not stop the running of the statute in favor of Steele to any lands not actually occupied by him. The patent to Dela-mater gave him no *right of entry;* did not give him actual posses-sion or extend his actual possession; did not make him the owner.

Steele's patent, fourteen years older than Delamater's, included the same land. He had actual possession of it, and claimed the whole. That claim under his survey and patent, with possession for more than 21 years, perfected his title to all, not actually occupied by Delamater and those claiming under him.

It is argued by the counsel for Bilheimer that *Delamater having obtained a patent for the land without title,* must be considered a *trustee* for the real owner, and that his entry was an entry for the real owner. The argument is not tenable and does not, if true, make for the plaintiffs in error. Steele had the older patent and the older possession. If the patentee, without title, is a trustee for the owner, and his entry the entry of the true owner, then *Steele* would be the *trustee* of the owner—his entry the entry of the owner, and no act of a stranger could affect the possession held by Steele, except so far as such stranger had actual posses-sion. Delamater's entry was not for the owner, nor can his ob-taining the patent subsequently, without title to the land, give any force to his entry. The entry of Delamater is the entry of a stranger, and does not stop the running of the statute of limita-tions in favor of Steele, beyond the lands actually occupied.

The opinion of the court was delivered July 21, by

BELL, J.—The constructive possession recognised by our law, as attendant upon a partial actual possession, by color of title of an interfering survey, or by marked and defined boundaries impinging upon an older original title, is characterized by all the qualities and incidents that belong to a *pedis possessio* of enclosed and cul-tivated land, and which are creative of estate by force of the sta-tute of limitations. Such constructive possession is said in Wag-goner *v.* Hastings, 5 *Barr* 300, and Kite *v.* Brown, *idem* 290, to be "of the same character with actual, and equally bars the right by the statute, without evidence of any acts of ownership within

[Smith v. Steele.]

the lines of the elder survey." Now a principal, undisputed quality of actual adverse possession is, that it operates to forbid the entry of all mankind, except the true owner. Though lawless in its origin, it yet presents one of those imperfect inceptions of right of which policy compels the recognition for certain purposes; and of these purposes none is more powerfully persuasive than the preservation of the public peace and the prevention of private litigation. Accordingly, when an intruder has succeeded in placing himself within the protection of the statute, he is regarded as rightfully in possession until challenged by some one clothed with a better title. The running of the statute, say the cases, is only suspended by the entry or action of the actual owner, or the unequivocal recognition of his title by the disseisor; (Altemus v. Long, 4 *Barr* 254; Adams v. Robinson, 6 *Barr* 271; Hinman v. Cranmer, 9 *Barr* 40); and an entry is thus operative, because, although at the moment there exists in fact a mixed possession, it is yet legally regarded as residing exclusively in the true owner, by virtue of his superior right: Altemus v. Campbell, 9 *W.* 20. It is only by the application of this principle that any effect is consistently given to a temporary entry. The presence of the intruder is eclipsed by the better title of the entering owner, and thus the necessary character of exclusiveness is, in contemplation of law, conferred upon a holding which otherwise would be equally shared by the antagonist parties. It will not be pretended that a temporary entry upon one of the enclosures of a cultivated estate, by a stranger to the title, could have the slightest effect upon the running of the statute in favor of a disseisor; and as, in this respect, there is no difference between an actual and a constructive possession, it is difficult to imagine how such an entry could work even the constructive ouster of a tenant of wild lands, claiming to the bounds of his survey. The moment we admit the doctrine of the cases, that constructive possession is of the same character with actual, the difficulties suggested by the plaintiffs in error, vanish. A necessary consequence of the doctrine is, that the entry of one without title, whether momentary or prolonged, must be attended with the same effect whether the prior holding be in fact, or a legal fiction. In either instance, a temporary entry is without consequence, since there is no right upon which to engraft the quality of exclusiveness, and continued occupancy is only operative upon that portion of the land actually enjoyed by the last intruder. That he claims by color of title, ill founded, can work no difference in the result. The virtue ascribed to color of title is, simply, that it affords evidence of the extent of an exclusive claim, which the law converts into an exclusive possession to the same extent, against all the world but the true owner. To permit this to be fatally interfered with by a counter imaginary possession, set up by another intruder, though under color of title,

D

[Smith *v.* Steele.]

would be to subvert every settled notion of exclusive hostile possession. This, I repeat, may be defeated by the act of one who can show he had a better right to the possession of the land than the actual tenant, but by none other, unless indeed, there be actual ouster, continued uninterruptedly for the statutory period, giving title, only, to the portion actually occupied.

What then is the position of the defendants below? It is not pretended they can derive any show of title to that portion of the land here in dispute through the sheriff's sale by virtue of the execution issued against Seeley, Gray and others in 1819, for there is no proof these had the slightest interest in the land sold. Nor does the patent obtained by Delamater in 1831, confer any title, since no connection whatever is shown to have existed between the latter and the Haines warrant and survey. Bilheimer consequently stands as an intruder, without title, and therefore incompetent to arrest the march of the statute in consummation of Steele's title by limitation, except as to the part actually held by the former and those claiming under him.

It results, from this view, that the charge of the Court below, complained of here, is in all respects correct.

Judgment affirmed.